IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **ELIZABETH ANN BERTSCH,**<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**OVERSTOCK.COM,**<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10CV37DAK |

　　　　This matter is before the court on Defendant Overstock.com's Motion for Summary Judgment. The court held a hearing on the motion on May 10, 2011. Plaintiff was represented by April Hollingsworth, and Defendant was represented by Rick Sutherland. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the law and facts relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

　　　　This case is an employment dispute in which Plaintiff, who was terminated about three months after she complained about the conduct of a co-worker, alleges causes of action against her former employer for hostile work environment sexual harassment and retaliation. Defendant claims that it responded properly to her complaint, no objectionable conduct occurred after her co-worker was given a corrective action plan, and Plaintiff's subsequent termination was based only on Plaintiff's own behavioral issues.

In 2001, Bertsch began working at Overstock. She was promoted and reassigned to the company's media department in 2002. In the media department, Berstch was required to interact with a number of co-workers, including Dustin Latimer. Berstch and Latimer did not get along well with each other.

Bertsch's direct supervisor, Brian Popelka and the vice president over her department, Stormy Simon, observed Plaintiff having difficulty working with others and Latimer in particular. In Bertsch's 2003 Annual Review, dated February 20, 2003, she was informed that "she needs to work on getting along with her fellow employees [and that] she needs to continue to develop her relationship skills." In her "employee comments" section of the review, Berstch noted "weak points–my attitude."

In Berstch's 2004 Annual Review, dated January 19, 2004, Berstch was informed that she "needs to work on the team dynamic." In her "employee comments" section of the review, Berstch indicated that "I agree with everything."

Despite these comments in connection with her reviews, Berstch's supervisors rated her interpersonal skills as "meets expectations." In addition, Berstch was never disciplined for a failure to get along with fellow employees until an incident with Latimer in February 2004.

Berstch alleges that her relationship with Latimer became strained in 2002 when she was in a group of women who complained about a poster Latimer had put up in his workspace of a scantily clad woman. Latimer had the poster up for two weeks before Overstock management told him to take it down. Latimer was upset about taking down the poster and made a comment that it would not have happened if women did not work in the department.

Also during the 2002-03 time frame, other employees complained about Latimer watching what appeared to be pornography on his work computer. Overstock states that Latimer

was the video buyer for it and, as part of his duties in late 2002 and early 2003, he had a monitor to view prospective videos for purchase. Overstock asserts that none of these were pornographic videos. However, following complaints that he was watching movies while at work, the practice was discontinued.

Berstch testified that not only was Latimer watching videos, but, at some point during this time, she saw Latimer visit pornographic websites on his work computer. Overstock states that Berstch did not complain or speak to supervisors about this problem. When another employee, however, went to their supervisor, the supervisor had Latimer turn it off that day.

There is some dispute about when Berstch complained to supervisors about Latimer and to whom she complained. Berstch claims that she independently complained to her direct supervisor and the vice president for her department, who told her to contact the human resources department. Neither of her supervisors testified that she spoke to them. Overstock claims that because of an email incident on February 18, 2004, involving Latimer, Berstch, and an outside vendor, they directed the issue of Latimer and Bertsch's poor working relationship to the human resources department. Both supervisors recalled discussing the issue and agreeing to turn the issue over to the human resources department, but neither recalls which of them informed the human resources department to look into it.

Berstch stated the date of her complaint differently on two different letters she submitted to the Utah Anti-discrimination and Labor Division ("UALD"), one before the email incident and one after it. In her deposition, Overstock asked her to clarify which date was correct, and she stated that the later date was correct. She stated that she remembered that her meeting with the human resources department occurred on a Friday, which would have been Friday, February 20, 2004. Thus, according to her deposition testimony, Berstch made her complaint after the email

incident. In addition, the later date is supported by the notes of the HR employee which reference the email incident.

The email incident involved Latimer stating to a vendor that a delay was due to Berstch's failure to provide a timely purchase order. Latimer copied their supervisor, Popelka, and the vice president of the department, Simon, on the email as well. Simon testified that when she saw the email she was concerned that Latimer had openly criticized a fellow employee to a vendor. She was also concerned because it was a vendor with whom she had a longstanding relationship. Simon was further concerned that Berstch had failed to issue the necessary purchase order and viewed it as part of Berstch's ongoing problem with lack of teamwork.

Either Simon or Popelka notified the human resources department ("HR") of the email and asked for an investigation into the source of the underlying contention between Berstch and Latimer. HR investigated the problem and prepared corrective action plans for both Latimer and Berstch. During the HR investigation, Berstch complained to HR that she had been subjected to insulting and discriminatory comments by Latimer. The HR notes show that she mentioned that Latimer insults her in front of others, talks about her behind her back, talks about women, talks about women as possessions, and makes her feel like a servant rather than a co-worker. She also states that when he is talked to he improves, but then he goes back to his behavior and he has gotten worse as time goes on.

The parties dispute whether Latimer's comments were random incidents or occurred frequently. Berstch contends that she has consistently said they were almost constant. Overstock, however, states that she has consistently referred to only a handful of comments over a multi-year span. The comments Berstch has identified include: Latimer stating that he would not have been required to take down the poster "if there were not women in the department;"

4

Latimer stating "this department would run better if the males were doing the job;" Latimer stating that "this is what happens when you have uneducated women working for you;" and Latimer stating something to the effect of "that's how it should be with all of them" in response to a co-worker's story that his ex-wife had paid for his trip to California and had sex with him while he was there.

Plaintiff asserts that too much time has passed for her to recall other specific comments. Overstock, however, points out that these were the only comments Berstch mentioned to HR during its investigation and the only comments identified in her complaint to the UALD. Overstock argues, therefore, that if she could not identify any other comments even during her employment, there does not appear to be any support for her contention that she has forgotten Latimer's comments over the years. Berstch also testified in her deposition that while she could not remember all of the comments, she could recall the worst and most hurtful comments.

On February 24, 2004, Latimer was given his corrective action plan on a "Disciplinary Notice" form for his February 18, 2004 email to the vendor. The form was prepared by HR and describes the problem as: "I have received and investigated complaints that Dustin contributes to a hostile work environment. The complaints also include abusive behavior by way of manner and sarcasm. Dustin has insulted a co-worker by e-mail to a vendor." The notice states that the corrective action to be taken by Latimer is: "Work with manager and other employees to improve working relationships with department personnel. Abstain from making derogatory remarks about sex and gender."

The next day, on February 25, 2004, a member of the HR staff and Popelka met with Berstch to discuss their intent to issue her a corrective action plan as well in connection with the vendor email incident. They explained that her failure to get along with co-workers was creating

5

performance issues that needed to be addressed. There were concerns that Berstch was prioritizing work based on how much she liked the person rather than on business necessity. Overstock states that they also talked to Berstch about separating her from other team members by having her spend more time doing her work in the warehouse than in the office. Because of the nature of her job, Berstch spent some days every month in the warehouse. Whereas other employees in the office, such as Latimer, did not have jobs that were performed in the warehouse. Berstch claims that at this meeting she was told she would have to work in the warehouse full-time. Whichever version is correct, no action was taken at that time and Berstch's work place did not change.

The next morning, February 26, 2004, Berstch sent a series of emails to Popelka, Simon, and several of her co-workers. Her email to Popelka and Simon stated:

> I think a reason so many people fail at things is that when presented with a problem, they can't imagine they are the cause. Because of a deeply humbling experience, I have learned that I am the problem. And, because I want the company to succeed, I am willing to do what it takes to become the solution. But, with the greatest amount of respect, I ask that I be given an opportunity to prove to my co-workers that I can change. I am 100% confident that given this opportunity, I can improve my attitude and become more "user friendly" to all of my colleagues. For fear of sounding arrogant, I don't believe my talents and abilities will be used effectively at the warehouse. I beg you to reconsider your decision. I want to change and I know that I can.

Plaintiff also sent an email directly to Latimer. She stated that she sent it because she wanted to, not because she was told to do it. She also wrote: "I have been blinded enough by my own pride and prejudices that I could not see I was the problem in our work relationship. Please believe me when I tell you how sorry I am for this. I never intended to make you feel I was unapproachable or that your projects were less of a priority. I truly never knew this is how I

make you feel. The last thing I want to have happen is to have my team feel they can't come to me for help. Please accept my most sincere apologies. I only hope I will be given the opportunity to prove I can change. Despite our differences (or mine as the case may be), I have enjoyed working with you."

Plaintiff also sent a general email apology to all of the employees in her department. In a follow-up email to a co-worker who expressed that he had not experienced any problems in working with her, Plaintiff wrote: "I was told that there were people in the department that said I made them uncomfortable, they were intimidated by me, and that they had to bribe me to get their work done. So, since I did not know who was talked to, I sent everyone a personal apology. God knows I need to, even my family has told me I can be a bitch at times. I would hope that if I ever do offend you or make you feel uncomfortable, that you would let me know."

Berstch now states that she did not believe she was the problem or even part of it. She states that she wrote the emails based on the advice of her mother and in an effort to keep her job.

Later the same day, HR issued Berstch her corrective action plan. The form stated the problem as: " I have received and investigated complaints that Beth contributes to a hostile work environment. The complaints also include abusive behavior by way of manner and sarcasm. Beth has shown a pattern of not supporting co-workers business needs and she needs to prioritize her tasks more effectively." Berstch was given the opportunity to question any aspect of her corrective action plan, but she did not. She accepted it and noted her acceptance in the employee statement portion of the form. In that section she wrote: "After having some time to step back and evaluate my own behavior, I realize I have been contributing to some departmental contention. I would like the opportunity to personally apologize to those I have offended to help make amends. I am willing to do my part for the success of the company." The corrective action

portion of the form stated: "Work with manager and other employees to improve working relationships with department personnel. Beth will treat all co-workers fairly and prioritize her work based on business needs. Beth will work on being more consistent in her interactions with others."

After the corrective action plan was issued on February 26, 2004, Berstch continued to work in the same position and keep the same work schedule with respect to days in the office and days in the warehouse. Berstch states that she cannot recall working in the warehouse from February to May 2004. But she also submitted an affidavit from Dawn Moya stating that she did not have any performance issues in the warehouse during that time frame.

On May 12, 2004, a warehouse manager complained to Popelka that Berstch was creating problems with other employees in the warehouse. Popelka also discovered that Berstch had failed to complete assigned work tasks. On May 17, 2004, Popelka and Simon decided to terminate Berstch for failing to improve her ability to work well within the team dynamic, failing to complete cross training of team members, isolating herself from co-workers, playing video games at work, and being sarcastic and creating disharmony.

Overstock asserts that rather than deny these reasons, Berstch only attempted to explain or justify the problems. Bertsch claims that Overstock was merely retaliating for her previous complaint. To the UALD, Berstch mentioned that she thought she was also fired because of a statement she made about Simon being flirtatious with the men in the department.

After the February 2004 complaint, however, Bertsch made no further complaints regarding Latimer's behavior and does not allege any specific conduct occurred after her February complaint.

After Berstch's termination, the parties dispute facts related to whether she mitigated her

damages. Overstock alleges that she made no reasonable effort to obtain employment, and Berstch claims that she was employed continuously. Berstch had been going to college while working at Overstock. After her termination, she continued attending college full-time and graduated with a degree in cosmetology a year after her termination. She began working in that field shortly after graduation and, in April of 2006, she purchased the barber shop at which she had been working.

## DISCUSSION

## Motion For Summary Judgment

### I. Hostile Environment Claim

To establish that a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiffs employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). To survive summary judgment on a claim alleging a sexually hostile work environment, Berstch must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment" and that she was "targeted for harassment" because of her gender. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir.2007) (quotation omitted).

This court recently analyzed the methodology to be used in cases of alleged co-worker harassment. In such cases, "'[a]n employer may be held liable for harassment by employees (when they act without apparent authority and outside the scope of their employment), and by

9

non-employees, only when they employer is negligent, that is when the employer fails to remedy harassment that it knows or should know about.'" *Robinson v. Sunroc Corp.*, 2010 WL 2079680, *5 (D. Utah May 24, 2010) (citations omitted). "'[T]he employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment." *Id.*

In a co-worker harassment case, "[t]he plaintiff bears the burden of bringing to the trial court's attention sufficient evidence to establish the essential element for employer liability: that the employer inadequately responded to incidents of harassment of which it knew or should have known." *Id.* "The 'touchstone for evaluation of an employer's response . . . is reasonableness,' which is whether the employer's action was 'reasonably calculated to end the harassment." *Id.* (citations omitted). "'A court may determine on summary judgment whether an employer's responses to claims of sexual harassment were reasonable as a matter of law.'" *Id.*

In this case, Berstch registered her complaints about Latimer to HR on February 20, 2004. Only two business days later, on February 24, 2004, Overstock issued a corrective action plan to Latimer informing him that he must refrain from making derogatory comments. After Overstock issued the corrective action plan to Latimer, Berstch does not allege any comment or behavior on his part that was offensive. Bertsch admits that she did not speak to anyone about Latimer during the remainder of her employment with Overstock. Berstch, however, believes that Overstock should have followed up with her. If Overstock had followed up with her, however, there is no evidence that Berstch would have had anything to report. Due to its prompt and remedial action, Overstock is not liable for co-worker harassment. This fact alone is dispositive of Berstch's hostile environment claim. *See Robinson*, at *5 ("The employer's liability for allowing a sexually

hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses.").

Even if Overstock's remedial actions were not enough, Berstch has not proven the elements of a hostile work environment claim. Berstch alleges only a few comments made over the span of two years. In fact, most of the comments were not even made directly to Berstch, she merely overheard some of them in Latimer's conversations with other employees. Although Berstch has sometimes stated that comments were constant, she has given the same few examples ever since she complained to the HR department in 2004. She has no support for her contention that the comments were constant. Berstch, therefore, has not made the requisite showing of severe or pervasive misconduct necessary to support a claim of hostile work environment.

## II. Retaliation

Overstock also argues that this court should grant summary judgment because Berstch cannot establish a prima facie case of retaliation. In the absence of direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies to a claim for retaliation. *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009). Under this framework, Berstch must establish a prima facie case of retaliation by showing: (1) a protected employee action, (2) an objectively materially adverse employer action either after or contemporaneous with her protected action, and (3) a causal connection between the protected action and the adverse action. *Id.*

### A. Protected Employee Action

Overstock assumes for purposes of this motion that Berstch's February 20 meeting with HR in which she complained about Latimer meets the first element's requirement for engaging in a protected activity.

### B. *Materially Adverse Employer Action*

The second element of the prima facie case requires Berstch to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53,63 (2006). This stage of the analysis must filter out trivial harms such that Title VII does not become "a general civility code for the American workplace." *Id.* at 68.

Berstch alleges that Overstock took three adverse actions: (1) the corrective action plan Overstock issued against her for the email incident; (2) the alleged threat that she would work in the warehouse or be terminated; and (3) her termination on May 17, 2004.

Overstock argues that the corrective action plan cannot be considered an adverse action. In *Kline v. Utah Antidiscrimination and Labor Division*, 2010 WL 1371362, at *6 (D. Utah March 31, 2010), the court recognized that "being subject to a [corrective action plan] is not an adverse employment action." This rule is made clear in *Haynes v. Level 3 Communications*, 456 F.3d 1215 (10th Cir. 2006) (expressly joining other circuits in holding that a PIP standing alone is not an adverse employment action). "A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status." *Id.*

Here, Berstch was given a corrective action plan as a result of her role in the vendor email incident. The corrective action plan identified the problem and the corrective action to be taken. As a result of the corrective action plan, Berstch had no change in her employment status or the terms of her employment. Therefore, the corrective action plan is not an adverse employment action.

Next, Berstch alleges that she was threatened with job reassignment in retaliation for her

complaint. Overstock states that Berstch's supervisors were only trying to remedy the situation by separating Latimer and Berstch, and only Berstch's position required spending time at the warehouse. Berstch's email to her supervisors the day after the conversation asks them to reconsider. This email does suggest that they had decided to move her to the warehouse. But, it also shows that she believed she could still discuss the issue. The fact that the reassignment never occurred shows that either it had not been decided in the conversation the day before or her request was considered. In either event, the prospect of being reassigned to the warehouse, which did not materialize, does not appear to be the kind of conduct that would dissuade an employee from raising other complaints. Whatever happened in the conversation did not dissuade Berstch from asking not to be reassigned.

Although the facts relating to the reassignment conversation are somewhat in dispute, it is undisputed that no job reassignment ever occurred. Even if a threat of reassignment was made, she experienced no adverse action and had no change to her terms of employment. Moreover, even if the reassignment had happened, the evidence demonstrates that she would have maintained her same position and terms of employment but merely worked in different location. The court, therefore, concludes that the threat of reassignment to the warehouse does not constitute a materially adverse employment action.

The final alleged adverse action was Berstch's termination, which occurred three months after her complaint. Berstch recognizes that the temporal proximity does not establish a causal connection between her complaint and subsequent termination. Rather, Berstch claims that her strongest evidence that she was terminated for her protected activity is that the reasons Overstock gave for her termination are not believable. To establish a prima facie case, however, a plaintiff must demonstrate a nexus between her complaint and her termination. Overstock is not required

13

to articulate its reasons for her termination until Berstch has established a prima facie case. A plaintiff cannot jump to the pretext discussion prior to making out a prima facie case.

Berstch does appear to argue that her termination is connected to her complaint because she was terminated for failing to correct the problems in her corrective action plan, which was issued at the same time as her complaint. This argument, however, fails to recognize that Berstch was not issued a corrective action plan in connection with her complaints against Latimer. Berstch was issued a corrective action plan for failing to prioritize her work according to business needs. The email incident occurred because of a delay in processing a purchase order. The email incident did not occur because of alleged sexual harassment. While Latimer was given a corrective action plan addressing both the improper email and the other behaviors complained about by Berstch, Berstch was only given a corrective action plan with respect to work performance that led to the inappropriate email. The fact that another work performance problem occurred three months later that caused her to be terminated does not relate to her complaints against Latimer. The work performance issues related to her termination had no connection to Latimer. The nexus she must show to establish a prima facie case of retaliation is a connection between her termination and her complaint regarding Latimer's conduct, not a connection between her own corrective action plan and her termination. Because Bertsch has failed to establish a prima facie case of retaliation, he claim fails and Overstock is entitled to summary judgment.

### III. Disparate Treatment in Termination

Berstch asks to amend her Complaint to assert a new claim for gender based disparate treatment in termination. She claims that she was terminated for persisting in certain work performance issues while Latimer was not. She points to an instance in 2005, about a year after

she was terminated, in which Latimer made an offensive comment in front of a vendor and was again disciplined but not terminated. Overstock responds that this is an independent cause of action that was never raised in the Complaint or before the UALD and cannot be raised now.

Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII, not a condition precedent to suit. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). This court lacks subject matter jurisdiction over the claim because it was not raised before the UALD. Berstch argues, however, that the court can allow her amendment because her new discrimination claim is sufficiently tied to her other claims. But her new claim is based on Latimer's conduct toward a vendor over a year after Berstch was terminated and after she made her UALD claim. The claim, therefore, does not arise out of the facts that were asserted to the UALD. Moreover, Berstch has made no attempt to show how Berstch and Latimer were similarly situated. It would be futile to allow Berstch to add a new disparate treatment claim. Therefore, her request to amend is denied.

## CONCLUSION

Based on the above reasoning, Defendant Overstock.com's Motion for Summary Judgment is GRANTED as to each of Plaintiff's claims. Because this ruling disposes of all of Plaintiff's claims, the Clerk of Court is directed to the close the case. Due to the particular circumstances presented by the case, the court finds that each party shall bear her and its own fees and costs. Although Defendant has prevailed on summary judgment, Plaintiff's case was not frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

DATED this 26th day of May, 2011.

       BY THE COURT:

       _____
       DALE A. KIMBALL
       United States District Judge